UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRY WILSON,

        Plaintiff,

v.

THE COCA-COLA COMPANY; LIBERTY
LIFE ASSURANCE COMPANY OF BOSTON;
THE COCA-COLA COMPANY BENEFITS
COMMITTEE,

        Defendants.

Case No. 1:13-cv-448

HON. GORDON J. QUIST

## OPINION

Plaintiff, Kerry Wilson, filed a complaint against his former employer, the Coca-Cola Company, and Liberty Life Assurance Company of Boston (Liberty Life). Plaintiff alleges various claims against Coca-Cola arising from his termination, including a breach of contract claim related to Plaintiff's short-term disability benefits. Plaintiff's sole claim against Liberty Life is a claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

Liberty Life moved to dismiss the claim against it, and the Court converted that motion to one for summary judgment. Plaintiff subsequently filed a cross-motion for summary judgment against Liberty Life, as well as a motion for summary judgment against Coca-Cola on the breach of contract claim. Coca-Cola then filed a cross-motion on that claim. Thus, the Court has before it the following motions: Liberty Life's motion for summary judgment on Count VI of the complaint, Plaintiff's motion for summary judgment on Count IV and Count VI of the complaint,

and Coca-Cola's motion for summary judgment on Count IV of the complaint.[1] The parties have filed responses and replies to those motions.

## Background

From 1992 until 2011, Plaintiff worked for Coca-Cola in its Paw Paw, Michigan plant. (Compl. ¶¶ 12, 14.) Plaintiff worked most recently as a dispatcher at the loading dock. (*Id.* at ¶ 16.) Plaintiff has Multiple Sclerosis (MS), which causes some physical limitations. (*Id.* at ¶¶ 17-25.) During his employment, Coca-Cola provided Plaintiff with various accommodations to allow him to perform his job. (*Id.* at ¶¶ 29-30.)

As an employee of Coca-Cola, Plaintiff was eligible for short-term disability (STD) benefits under the terms of the Short Term Disability Income Program (STD Plan). (Compl. ¶ 42; Pl.'s Mot. for Summ. J. Ex. 1.) The STD Plan is a self-funded plan and not subject to ERISA. (Compl. ¶ 46.) The STD Plan pays benefits to eligible employees for up to 26 weeks of eligibility. (Pl.'s Mot. Ex. 1 at 2, 4.)

Plaintiff was also a participant in the Long Term Disability Income Plan of the Coca-Cola Company (LTD Plan). (Compl. ¶ 42; Pl.'s Motion Ex. 2.) The LTD Plan is sponsored by Coca-Cola and administered by Liberty Life. (Compl. ¶ 47.) The LTD Plan is a qualified employee welfare benefit plan under ERISA. (*Id.* at ¶ 48.)

In August 2011, Coca-Cola announced that, pursuant to a restructuring plan, it would eliminate Plaintiff's position and create a new position that involved additional responsibilities. (*Id.* at ¶¶ 31-35.) Coca-Cola made clear that any employee whose position was eliminated would have

---

[1] Coca-Cola's brief states that it seeks summary judgment on Count V. Count V is a claim based on equitable estoppel. However, Coca-Cola's argument throughout its brief is focused on breach of contract. Thus, the Court will assume that Coca-Cola intended to state that its motion pertains to Count IV.

2

to apply for a new position. (*Id.* at ¶ 36.) Coca-Cola advised Plaintiff that, unless he obtained a different position, his last day of employment would be September 25, 2011. (Ans. ¶ 63.)

On August 23, 2011, Plaintiff applied for STD benefits. (Compl. ¶ 50; Ans. ¶ 50.) On September 23, 2011, Coca-Cola notified Plaintiff that his request for STD benefits was approved retroactive to August 23, 2011. (Compl. ¶¶ 51, 53.) On September 25, 2011, Coca-Cola notified Plaintiff that it had terminated his employment. (*Id.* at ¶ 65.) On September 26, 2011, the administrator of the STD Plan received a letter from Plaintiff's doctor indicating that Plaintiff would need to be off work for an additional six months. (Waugh Decl. ¶ 6.). The following day, the administrator sent Plaintiff a letter notifying him that his STD benefits would run until February 21, 2012. (*Id.*) On October 12, 2011, however, Coca-Cola notified Plaintiff that his STD benefits had been discontinued as of September 25, 2011. (Compl. ¶ 75.)

On February 21, 2012, Plaintiff applied for LTD benefits. (*Id.* at ¶ 77.) On February 24, 2012, Coca-Cola notified Liberty Life that Plaintiff had retired on September 25, 2011. (McGee Decl. ¶ 5.) That same day, Liberty Life notified Plaintiff that his application was denied because he was not an active employee of Coca-Cola after September 25, 2011. (McGee Decl. Ex. B.) Plaintiff did not appeal the decision to Liberty Life. (McGee Decl. ¶ 8.)

**Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## Discussion

### 1. Breach of Contract

In Count IV of the complaint, Plaintiff alleges that the STD Plan constitutes a contract with Coca-Cola, and that Coca-Cola breached that contract by discontinuing Plaintiff's STD benefits after he was terminated. Plaintiff moves for summary judgment on that claim, arguing that he was eligible to receive benefits after his termination under the terms of the STD Plan. In its cross-motion, Coca-Cola argues that the STD Plan is not an enforceable contract, and that even if it was a contract, the terms did not allow Plaintiff to receive STD benefits after his termination.

Under the terms of the STD Plan, Plaintiff was entitled to STD protection only while he was in Coca-Cola's employ. The STD Plan provides that an "employee of the Company" is eligible to participate in the STD program. (Pl.'s Mot. Ex. 1 at 2.) It advises the employee that "short term disability protection ends on your last day of active employment with the Company or a participating affiliate for any reason," and that "if you leave the Company . . . for any reason, or if you are no longer an eligible employee, your payments stop." (*Id.* at 11-12.)

Plaintiff points out that the STD Plan states that STD protection, and not STD benefits, end on the last day of employment. Thus, Plaintiff argues, an employee may not apply for benefits after the last day of his employment, but may continue to receive benefits if he applied previously. Plaintiff's argument is belied by a reading of the other sections of the STD Plan, specifically that stating that STD payments stop if an employee leaves Coca-Cola "for any reason." Although Plaintiff argues that this section only applies if an employee leaves of his own initiative, that reading

4

fails to account for the phrase "for any reason." Under the terms of the STD Plan, an employee's STD payments end if he leaves Coca-Cola for any reason — whether of his own initiative or because he was terminated.

Under the terms of the STD Plan, Plaintiff was entitled to receive benefits only while he was an employee of Coca-Cola. He was not entitled to payments after his termination on September 25, 2011. Accordingly, there was no breach of contract, and Coca-Cola is entitled to summary judgment on Count IV.

### 2. Denial of Long-Term Disability Benefits

In Count VI of the complaint, Plaintiff alleges that Liberty Life wrongfully denied him LTD benefits in violation of ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Liberty Life argues that it is entitled to summary judgment because Plaintiff did not appeal Liberty Life's decision, and thus did not exhaust his administrative remedies. Plaintiff responds that exhaustion was futile because Liberty Life's decision was based on the fact that Plaintiff was no longer employed by Coca-Cola. Plaintiff further moves for summary judgment, arguing that the matter should be remanded to the Administrator to determine whether he is entitled to benefits.

Before seeking judicial review of a decision to deny benefits, an ERISA plan participant must first exhaust his administrative remedies. *Weiner v. Klais & Co.,* 108 F.3d 86, 90 (6th Cir. 1997). Although ERISA does not explicitly require exhaustion, the Sixth Circuit has held that the administrative scheme of ERISA imposes such a requirement. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). Exhaustion may be excused, however, if it would be futile. *Welsh v. Wachovia Corp.*, 191 Fed. App'x 345, 358 (6th Cir. 2006). To meet this standard, a plaintiff must demonstrate that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.*

In this case, Liberty Life informed Plaintiff by letter that it was "unable to approve [his] claim" because he was "no longer an active employee at [his] date of disability."[2] (Dkt. #11, Ex. B.) The letter also stated that Coca-Cola had informed Liberty Life that Plaintiff had retired as of September 25, 2011, which conflicted with information provided by Plaintiff indicating that his last day of work was November 19, 2011.[3] (*Id.*) Finally, Liberty Life advised Plaintiff of his right to appeal its decision, and encouraged him to provide documentation that he was employed prior to November 19, 2011, medical records from November 2011, and other information.

Plaintiff argues that any appeal would have been futile because Liberty Life determined that Plaintiff's continued employment was a pre-condition for benefits, and thus its decision would never have changed. (Dkt. #18 at 9.) That is not what Liberty Life's letter said, however. Rather, the letter stated that Plaintiff was not eligible for benefits because he was not employed by Coca-Cola at his "date of disability." The circumstances — specifically Plaintiff's receipt of STD benefits beginning in August 2011 — indicate that Plaintiff was disabled before his employment was terminated. Plaintiff could have submitted evidence demonstrating this to Liberty Life, and it may have changed its decision. Thus, an appeal would not have been futile, and Plaintiff was required to exhaust.

Upon determining that a plaintiff failed to exhaust his administrative remedies, it is within the sound discretion of the court to dismiss the case without prejudice or stay the case pending

---

[2] Liberty Life avers that Plaintiff submitted a claim for benefits with a reported disability date of November 20, 2011. (Dkt. # 21 at 3; McGee Decl. ¶ 4.) Although Liberty Life's own records indicate that Plaintiff's disability onset date was November 20, 2001, it is unclear where Liberty Life derived this information. The Court was unable to find anything in the paperwork submitted by Plaintiff indicating the date of disability.

[3] Although Liberty Life stated that Plaintiff reported that his last day of work was November 19, 2011, the Court could find nothing in Plaintiff's submitted paperwork indicating that he did so. On the contrary, in the employment section of his application, Plaintiff clearly stated that he worked for Coca-Cola until September 25, 2011. (Dkt. # 11, Ex. C.)

6

administrative exhaustion. *See Zappley v. Stride Rite Corp.*, No. 09-CV-198, 2010 WL 2735668, at *4 (W.D. Mich. July 9, 2010). The Court expects that Plaintiff will attempt to exhaust his administrative remedies and correct the apparent inaccuracies in Liberty Life's records. Thus, the Court will stay the case to allow Plaintiff to attempt to exhaust.

An order consistent with this Opinion will follow.


Dated: February 27, 2014                             /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE